IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JARRETT PITTMAN-WRIGHT and<br>DEVA HARRIS,<br><br>Defendants.<br>                                                                  / | No. CR 11-00901 WHA<br><br>**ORDER DENYING MOTION<br>TO DISMISS INDICTMENT,<br>SUPPRESS EVIDENCE,<br>AND COMPEL DISCOVERY** |

**INTRODUCTION**

A defendant moves to dismiss the indictment, to suppress evidence, and to compel discovery. For the reasons stated below, the motion is **DENIED**. There is no need for an evidentiary hearing.

**STATEMENT**

On December 8, 2011, movant Jarrett Pittman-Wright and non-moving defendant Deva Harris were indicted and each charged with conspiracy to pass counterfeit obligations in violation of 18 U.S.C. 371 and a forfeiture allegation. The same indictment also charged movant Wright with manufacturing counterfeit obligations in violation of 18 U.S.C. 471, and three counts of passing of counterfeit obligations in violation of 18 U.S.C. 472 (Dkt. No. 1).

On May 3, 2010, movant was sentenced to five years of state probation. As part of the terms of his probation, he was subject to the following search condition: "Submit to search and seizure by any Probation Officer or any other law enforcement officer at any time of the day or

1 night with or without a search warrant, including: vehicle, residence, person or any other
2 property under your control" (Def. Exh. A). On August 10, 2011, movant was arrested on
3 allegations that he violated his state probation (Melton Exh. B). On January 11, 2012, movant,
4 represented by Deputy Public Defender Charles Denton, admitted the probation violation and
5 was sentenced to time served (Melton Exh. A at 1). Movant was scheduled to be released from
6 state custody on January 11, 2012.

Instead, he was detained based on a federal arrest warrant based on the charges in this federal action (Ashley Decl. ¶ 8). On January 11, 2012, the government filed a petition for writ ad prosequendum and order requesting that movant be transferred into federal custody (Dkt. No. 8). By order dated the same date, but filed on January 12, Magistrate Judge Jacqueline Scott Corley granted the writ ad prosequendum, to secure movant's presence in the federal action (Dkt. No. 9). The government hand-delivered a copy of the writ ad prosequendum order to the United States Marshal's office on January 12, and it was stamped as received by the Marshal's office on the same day (Melton Exh. G). The Marshal's office received a second copy of the writ ad prosequendum order on January 27 (Melton Exh. H). The government contends the first copy had been improperly routed (Opp. 12). Movant appeared before Magistrate Judge Corley on January 31, for his arraignment and initial appearance (Dkt. No. 10).

This order makes the following factual findings based on its review of all submissions made related to the motion to suppress. At issue in the motion to suppress is the search conducted on July 7, 2011, of a black backpack seated adjacent to movant at Straw Hat Pizza, and the search of movant's residence, and Mr. Brandon Paris, movant's roommate's bedroom and personal computer within the residence, on August 4, 2011. The factual findings are based on the exhibits submitted into evidence by both parties.

### 1. SEARCH OF BLACK BACKPACK.

On July 7, 2011, public safety officer Tara Douglas was on patrol duty for the Rohnert Park Department of Public Safety. While at Rohnert Park Fire Station 2, she was contacted by Matthew Gray, an employee of the Straw Hat Pizza restaurant in Rohnert Park. She was acquainted with Mr. Gray because he was in the explorer program, a volunteer program for

2

1  youth interested in careers as police officers or firefighters. Mr. Gray informed Officer Douglas
2  that a male customer had just attempted to make a purchase at the Straw Hat Pizza restaurant
3  using a counterfeit bill. Officer Douglas immediately responded and arrived at Straw Hat Pizza
4  at 7:14 p.m. Officer Douglas went inside the restaurant and spoke with the employee at the cash
5  register, Yolanda Ramirez. Ms. Ramirez explained that a male customer had attempted to make
6  a purchase at Straw Hat Pizza with a counterfeit bill. Ms. Ramirez did not accept the bill and
7  returned it to the male, who then proceeded to pay with real currency. Ms. Ramirez pointed out
8  the male suspect to Officer Douglas, who then went to make contact with the suspect. At the
9  time, Officer Douglas was wearing a full Rohnert Park Department of Public Safety patrol
10 uniform, which had badges identifying her as a law enforcement officer.

11     Officer Douglas asked the male suspect to identify himself. The suspect verbally
12 identified himself as Jarrett Pittman-Wright. Officer Douglas asked movant for identification but
13 movant claimed he did not have any. When Officer Douglas asked movant about the $100 bill
14 he attempted to pass at the cash register, movant claimed that his friend Don had owed him
15 money and had given him the bill earlier in the day. At that same time, movant was holding his
16 cell phone to his ear and claimed to be calling Don. Officer Douglas asked movant if he could
17 see the $100 bill. Movant took the $100 bill out of his pants pocket and handed it to Officer
18 Douglas, who observed the color and feel of the bill to be strange. While Officer Douglas was
19 talking to movant, Sergeant James Brady arrived to assist.

20     Officer Douglas made further inquiries into movant's story about the origin of the $100
21 bill. She asked for "Don's" last name. Movant did not know and stated only that Don owed him
22 money and that he did not know the bill was counterfeit at the time he tried to pass it. While
23 movant was telling Officer Douglas this story, he was staring off into the restaurant. It appeared
24 to Officer Douglas that movant's story lacked credibility and that he was making it up.

25     While talking to movant, Officer Douglas noticed that there was a black backpack sitting
26 next to him on the booth. Officer Douglas stated in her declaration that she obtained movant's
27 consent to search the black backpack. Movant stated in his declaration that Officer Douglas
28 asked him and his companion who the bag belonged to and before movant was able to reply, she

1 picked the backpack up and started looking through it. The order makes no finding as to whether
2 movant consented to the search of the black backpack.

3     Officer Douglas found a stack of $100 bills when she opened the black backpack. The
4 color of the bills seemed slightly off to her and the paper did not feel like the paper used for
5 authentic United States currency. Officer Douglas observed movant acting nervous as she was
6 searching the black backpack. Officer Douglas arrested movant, placed him in handcuffs,
7 searched his person, and placed him in the back of the patrol vehicle. During the search of
8 movant's person, Officer Douglas found three debit cards in the name of Deva Harris, his sister.
9 Once movant was in the patrol vehicle, Officer Douglas went back inside the restaurant, leaving
10 movant attended by Sergeant Brady. While Officer Douglas was inside the restaurant Sergeant
11 Brady re-searched movant because he was exhibiting nervous behavior in the back of the patrol
12 vehicle. When Officer Douglas returned to the patrol car, Sergeant Brady handed her an
13 additional small stack of $100 bills he found in movant's right shoe. Officer Douglas believed
14 the bills to be counterfeit currency. Officer Douglas then compared the $100 bills taken from the
15 black backpack and movant's right shoe with the original $100 bill movant attempted to pass to
16 the Straw Hat Pizza restaurant and saw that the bills had the same serial number, CB40351475C
17 on them. Officer Douglas read movant his Miranda rights prior to transporting him to the police
18 station.

19     **2.  SEARCH OF RESIDENCE.**

20     On August 4, 2011, United States Secret Service Special Agents Jeff Ashley, Matt
21 Malone, Stephanie Henefeld, Tia Wuetrich, and Jace Alfiere conducted a search of the residence
22 located at 1526 32nd Street, in Oakland. Senior Special Agent Bill Bishop and Oakland Police
23 Officer Ryan Goodfellow were also present.

24     Prior to the search, Special Agent Ashley was assigned to investigate movant's use of
25 counterfeit currency. He was the lead special agent on the case. On July 8, 2011, Special Agent
26 Ashley conducted a search of the National Crime Information Center system to determine
27 whether movant had a criminal history. The NCIC system search results indicated that movant
28 was currently on probation for a felony conviction. That same day, Special Agent Ashley

4

1  contacted the Alameda County Probation Office to confirm that the NCIC system results were
2  accurate and to determine whether movant's probation terms included a warrantless search
3  provision.  The Alameda County Probation Office duty officer confirmed that movant was on
4  probation and subject to a warrantless search condition.  At the request of Special Agent Ashley,
5  the Alameda County Probation Office duty officer faxed Special Agent Ashley a copy of
6  movant's Alameda County Superior Court judgment, which stated the specific terms of the
7  probation search condition and the dates of movant's probationary period, which was May 3,
8  2010 to May 3, 2015.  Special Agent Alfiere also knew, prior to conducting the search, that
9  movant was on probation with a warrantless search condition because Special Agent Ashley
10 confirmed this information for him.

11      Special Agent Ashley reviewed the terms of the search provision and reviewed the
12 judgment to determine where movant resided.  The judgment indicated that movant lived at 1526
13 32nd Street in Oakland.  Special Agent Ashley also reviewed the July 7, 2011 Rohnert Park
14 Department of Public Safety Incident Report to verify movant's address.  The incident report
15 listed 1526 32nd Street, Emeryville, California, as his address.  (Emeryville and Oakland adjoin
16 each other.)  Special Agent Ashley then conducted an online search for both addresses and
17 determined the area was on the border of Oakland and Emeryville and that the two addresses
18 were, in fact, the same location.

19      On August 4, 2011, the search team met at the Oakland Police Department at 10:00 a.m.
20 and proceeded to go directly to 1526 32nd Street.  Officer Goodfellow and Special Agent Ashley
21 knocked on the front door of the residence when the team arrived.  No one answered.  The entire
22 search team waited outside the residence for approximately 10 to 20 minutes.  Then, five
23 members of the search team left to go to a second address where movant's girlfriend was
24 believed to reside.  Special Agents Wuetrich and Alfiere stayed behind across the street from
25 1526 32nd Street in a car.

26      After approximately five to ten minutes of waiting outside the residence in their car, a
27 dark BMW drove into the driveway of 1526 32nd Street, the garage door opened, and the car
28 drove in.  Special Agents Wuethrich and Alfiere approached the BMW inside the garage to make

5

contact with the driver, who was an African-American male. Special Agent Alfiere approached the driver's side of the vehicle. The driver opened the door. Special Agent Alfiere identified himself by stating "police," and asked the driver to show him his hands. At that point, Special Agent Alfiere had a weapon drawn for his safety. The driver showed his hands and exited the vehicle. Special Agent Alfiere asked the driver to identify himself. The driver verbally identified himself as Brandon Paris. Special Agent Alfiere confirmed his identify with his driver's license. After confirming Mr. Paris' identify, Special Agent Alfiere re-holstered his weapon. Mr. Paris informed the agents that he was a resident of 1526 32nd Street, and had resided there as movant's roommate for approximately two months. This order makes no finding as to whether Mr. Paris was handcuffed or pinned to the ground during this interaction with law enforcement.

Special Agent Wuethrich telephoned Senior Special Agent Bishop to inform him that movant's roommate had returned to the house. Special Agent Bishop responded that the search team would return to 1526 32nd Street.

Special Agent Alfiere informed Mr. Paris that his office was investigating movant for criminal activity. Mr. Paris confirmed that 1526 32nd Street was movant's residence, and that he rented a room from defendant and believed movant owned the entire house.

The rest of the team returned to 1526 32nd Street within five to ten minutes of receiving Special Agent Wuethrich's telephone call. Movant was with them. At this point, the search team, except for Special Agent Alfiere, entered the residence. Special Agent Alfiere informed Mr. Paris the officers were going to conduct a probation search of the residence. Special Agent Alfiere spoke with Mr. Paris in the garage for approximately 15 to 20 minutes to determine if he had knowledge of movant's counterfeiting activity. Mr. Paris had no such know knowledge.

Special Agent Alfiere asked Mr. Paris for permission to search his bedroom in the residence at 1526 32nd Street. Mr. Paris consented. This order makes no finding as to whether this consent was given voluntarily. Special Agents Alfiere and Bishop and Mr. Paris went upstairs to Mr. Paris' bedroom. Special Agent Bishop found a chemical stained baking pan in Mr. Paris' closet. Mr. Paris indicated to the agents that he had no idea how the pan got in his

6

closet and that he was being framed. Mr. Paris told the agents that he had a motion-activated camera in his bedroom and that he would show the agents the video to exonerate himself. Mr. Paris was in the bedroom for the duration of the search.

Mr. Paris operated the video while Special Agent Alfiere reviewed the footage over his shoulder. The video showed movant wearing the same clothes he was wearing the day of the search of the residence, placing the baking pan into Mr. Paris' closet and placing other items, including paper bearing counterfeit images in Mr. Paris' bedroom. The time stamps of the video footage showed that the footage was taken between 10:37 a.m. to 10:53 a.m. on August 4 (on the day of the search) — before law enforcement entered the residence to search it. Mr. Paris consented to allowing Special Agent Alfiere to operate the computer and review the video footage again. This order makes no finding as to whether the consent was voluntarily given. As Special Agent Alfiere reviewed the footage again, he directed Special Agent Bishop to where to search next for additional evidence based on where the video showed movant hid it. At 11:31 a.m. Special Agent Ashley entered Mr. Paris' bedroom with a paper consent-to-search form. Mr. Paris signed the form, which explicitly stated that he gave his consent to a search of the residence and his personal computer. This order makes no finding as to whether this consent was given voluntarily. Mr. Paris then assisted Special Agent Alfiere in copying the video footage onto a CD.

**ANALYSIS**

**1.    NO NEED FOR AN EVIDENTIARY HEARING.**

Defense counsel requests an evidentiary hearing, asserting that there are contested facts at issue. A district court "ordinarily is required [to hold an evidentiary hearing] if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (citation omitted).

Defense counsel argues that an evidentiary hearing is needed because there are contested issues of fact as to whether movant consented to the search of the black backpack seated next to

7

him in the booth at Straw Hat Pizza and whether Mr. Paris voluntarily consented to the search of the residence at 1526 32nd Street, his bedroom in the residence, and his personal computer.

*First*, while there are dueling declarations on the issue of whether movant consented to the search of the black backpack at Straw Hat Pizza, resolution of the issue is not necessary because whether or not movant gave his consent, as is discussed below, Officer Douglas was entitled to search the black backpack as a search incident to lawful arrest.

*Second*, defense counsel argues, based on a declaration submitted by movant, that any consent Mr. Paris gave related to the search of the residence, his bedroom, and his personal computer on August 4, 2011, was given involuntary due to the alleged "coercive nature of his encounter with the agents," when "the agents brandished their firearms" and "ordered Mr. Paris to raise his hands" (Reply Br. 8). The declaration submitted by movant states (Wright Decl. ¶ 8):

> The agents apparently believed Mr. Paris was me. The agents pinned Mr. Paris on the ground and handcuffed him. After the agents checked Mr. Paris' identification, they removed the handcuffs. Mr. Paris relayed these events to our other housemate who relayed them to me.

Furthermore, at the motion hearing, the Court inquired whether defense counsel attempted to obtain a declaration from Mr. Paris and whether he declined to provide a declaration. Defense counsel stated that his investigator had made diligent efforts to track down Mr. Paris but was unsuccessful. The Court would have been willing, out of an abundance of caution to subpoena Mr. Paris to testify at an evidentiary hearing as to the issue of consent — even though, it is not at all clear that such a hearing would be required based on the record in this case. However, even assuming movant's above-stated offer of proof would be proven at the evidentiary hearing, it would be irrelevant to deciding the instant motion because as explained below movant does not have standing to raise a Fourth Amendment challenge to the search of Mr. Paris' bedroom and his personal computer. Furthermore, whether or not Mr. Paris voluntarily consented to the search of other parts of the residence is irrelevant because this order concludes the search of the residence was a lawful probation search, thus, no consent was needed.

8

There are no factual issues going to the validity of either search that need to be resolved in order to decide this motion. No evidentiary hearing is required.

### 2. RULE 5 PRESENTMENT REQUIREMENT.

Movant seeks dismissal of the indictment on the ground that his delay in presentment to a federal magistrate judge by 20 days, at most, constituted an "egregious" violation of Federal Rule of Criminal Procedure 5 (Br. 9–10). Rule 5 requires that "[a] person making an arrest with the United States must take the defendant without unnecessary delay before a magistrate judge . . . unless a statute provides otherwise." Movant was scheduled to be released from state custody on January 11 (Melton Exh. A at 1). Instead, he was detained and held at the Santa Rita County Jail based on a federal arrest warrant stemming from charges in this federal action. Movant first appeared before Magistrate Judge Corley on January 31, 2012, and was arraigned that day (Dkt. No. 10). The government submits that the reason for the 19-day delay was "an unfortunate paperwork routing mistake" (Opp. 12). Although the United States Attorney's Office hand delivered a copy of the ordered writ ad prosequendum to the United States Marshal's Office on January 12, 2012, the government stated in its opposition brief that "it appears that the order was not properly routed" (*ibid.*). There is no evidence in the record of this, except for the contention made in the opposition brief. It was not until the Marshal's Office received a second copy of the ordered writ ad prosequendum on January 27, 2012, that movant was scheduled for an appearance before Magistrate Judge Corley.

Defense counsel's theory in support of dismissal of the indictment is that movant was "effectively arrested" on January 11, "when he was held in state custody based on his federal arrest warrant," and that the delay between January 11 and January 31, when he was presented to the magistrate judge violated Rule 5 (Br. 10). Defense counsel fails to address the motion to dismiss the indictment in his reply. Assuming the time movant was in state jail would count as a period of delay for purposes of the Rule 5 inquiry (even though movant states that he was in state, not federal custody), dismissal of the indictment is still not warranted here.

"[P]resentment is the point at which the judge is required to take several key steps to foreclose government overreaching: informing the defendant of the charges against him, his

9

right to remain silent, his right to counsel, the availability of bail, and any right to a preliminary hearing; giving the defendant a chance to consult with counsel; and deciding between detention or release." *Corley v. United States*, 556 U.S. 303, 320 (2009). The typical remedy for violation of Rule 5 is suppression of any admission wrongfully obtained during the period of delay that caused movant not to timely receive an advisement of his rights. Here, there is no evidence anyone attempted to interview defendant or that any admissions were obtained during the 19-day period when he was held in the state jail. Movant claims no other harm aside from violation of Rule 5.

Our court of appeals has previously held that dismissal of the indictment was not required in a case where a defendant was held without presentment for four months, during which time he was interrogated by prison officials but where the government obtained no confessions or admissions from the defendant. *Bayless v. United States*, 381 F.2d 67, 70–71 (9th Cir. 1967); *see United States v. Savchenko*, 201 F.R.D. 503, 506 (S.D. Cal. 2011) ("The appropriate remedy for a violation of the 'without unnecessary delay' standard of Rule 5 is the suppression of any prejudicial statements provided by the accused during the subject period."). Defense counsel cites to *United States v. Osunde*, in support of movant's motion for dismissal, 638 F. Supp. 171 (N.D. Cal. 1986). In *Osunde*, there was a 106-day presentment delay. The district court concluded that violations of the Speedy Trial Act and Rule 5 warranted dismissal of the indictment. *Osunde* is distinguishable from our case because the delay in presentment was significantly longer and because there was also a Speedy Trial Act violation. Dismissal of the indictment is not the appropriate remedy in this instance. The motion to dismiss the indictment is **DENIED**.

### 3. SUPPRESSION OF EVIDENCE.

Movant seeks to suppress the evidence obtained from the search of the black backpack at Straw Hat Pizza on July 7, 2011, and the evidence obtained from the search of the residence at 1526 32nd Street, conducted on August 4, 2011, including the evidence obtained from the search of movant's roommate's bedroom and his personal computer that same day.

### A. Black Backpack.

Defense counsel moves to suppress all evidence obtained from the search of the black backpack on July 7, 2011. The government bears the burden of proving consent to a warrantless search. *United States v. Mendenhall*, 446 U.S. 544, 557 (1980). There is a factual dispute as to whether movant consented to a search of the black backpack that was adjacent to him in the booth at Straw Hat Pizza.

The government contends Officer Douglas was entitled to search the backpack as a search incident to a valid probable cause arrest, irrespective of whether movant consented to a search. An officer may conduct a warrantless arrest if the arrestee has committed an offense in the officer's presence, or if the officer has probable cause to believe that the arrestee has committed a felony. *Virginia v. Moore*, 553 U.S. 164, 175–78 (2008). Once there is probable cause for an arrest, which is not based on evidence obtained from the search in question, it is not important whether the search incident to arrest preceded or followed the arrest. *Rawlings v. Kentucky*, 448 U.S 98, 111 (1980).

The government contends that Officer Douglas had probable cause to arrest movant for attempting to pass counterfeit currency, in violation of 18 U.S.C. 472, a felony. The order agrees. Probable cause to arrest exists when an officer has "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). To prove a violation of Section 472, the government must prove that movant passed or attempted to pass counterfeit currency. Probable cause to believe a currency is counterfeit can be demonstrated when the currency looks "odd" and "lack[s] many modern security features." *Rodis v. San Francisco*, 558 F.3d 964, 971 (9th Cir. 2009). The government must also show movant had knowledge that the currency was counterfeit and had a specific intent to defraud. *Id*. at 969–70.

Previously, our court of appeals has stated that intent and knowledge may be inferred from the circumstances surrounding the events. *United States v. Lorenzo*, 570 F.2d 294, 299 (9th Cir. 1978). Even so, the court has not definitely resolved the issue of what evidence is required

11

to establish probable cause of intent to defraud for purposes of Section 472.  Recently, in *Rodis*, a Section 1983 action, our court of appeals recognized that "[a]ll of the other circuits to have answered this questions . . . have found that '[t]he passing of a counterfeit note coupled with an identification of the person who passed the note furnishes probable cause to arrest the individual identified as passing the note."  558 F.3d 970.  But because a decision on what level of evidence was required to determine whether there was probable cause to find intent to defraud was not necessary to the disposition of the action in *Rodi*s, our court of appeals declined to answer the question.

In this case, the evidence shows that the arresting officer had probable cause to believe that movant attempted to pass a bill he knew to be counterfeit.  Officer Douglas was informed by Matthew Gray, an employee of Straw Hat Pizza, who he knew through the explorer program, and Yolanda Ramirez, a cashier at Straw Hat Pizza, that a man attempted to pass a counterfeit bill (Douglas Decl. ¶¶ 2–4).  Ms. Ramirez identified the man to Officer Douglas, who went up to the suspect while he was seated at a booth in the pizza restaurant.  The man identified himself to Officer Douglas as Jarett Pittman-Wight, our movant (Douglas Decl. ¶ 6).  Officer Douglas asked movant about the $100 bill he tried to pass at the register and movant said his friend Don had given it to him earlier in the day.  Movant could not remember Don's last name when Officer Douglas asked him for it, and he was only able to provide a vague answer as to why Don owed him money.  Movant also claimed he did not know the bill was counterfeit at the time he tried to pass it.  Officer Douglas asked to see the bill and movant took it out of his pocket and handed it to her.  Officer Douglas observed "the color on the bill appeared strange and the bill felt different from a regular bill" (Douglas Decl. ¶¶ 7–8; Melton Exh. C at JPW000027).  While Officer Douglas was asking movant questions, he "was staring off across the restaurant and seemed distracted by his attempts to make a phone call" (Douglas Decl. ¶ 8).  Movant has submitted a declaration regarding the events that took place at Straw Hat Pizza on the day in question.  The declaration does not dispute any of the facts stated above.

Based on this evidence, there was probable cause to believe the bill was counterfeit and that movant attempted to pass it.  Moreover, movant's specific intent to defraud can be inferred

from the circumstances surrounding the event. Movant did not deny that the bill was counterfeit. He could not provide a clear explanation of where he obtained the bill. And movant appeared distracted when the officer was questioning him. Officer Douglas had probable cause to arrest movant prior to her search of the black backpack.

Because there was probable cause to arrest movant, Officer Douglas was entitled to search incident to arrest, the area within movant's immediate control to look for weapons or destructible evidence. To conduct a valid search incident to arrest, "the area searched must be that area under the arrestee's immediate control when he was arrrested, and (2) events between the time of the arrest and search must not render the search unreasonable." *United States v. Nohara*, 3 F. 3d 1239, 1243 (9th Cir. 1993). The black backpack was seated next to movant on the bench where he was seated. Officer Douglas searched it "for officer safety" (Douglas Decl. ¶ 10). The backpack was searched immediately before movant was arrested, thus no delay passed that could render the search unreasonable. *Rawlings*, 448 U.S at 111 (concluding "we do not believe it particularly important that the search preceded the arrest rather than vice versa").

Officer Douglas' search of the black backpack was a permissible search incident to arrest. As such, the order need not resolve the factual dispute as to whether movant consented to the search of the black backpack seated next to him in the booth at Straw Hat Pizza. Therefore, no evidentiary hearing is needed.

### B. Lawful Probation Search of Residence.

The government contends that law enforcement's search of movant's residence on August 4, 2011, was a lawful probation search. The search was conducted without a warrant. Thus, the government bears the burdening of establishing that a valid exception to the warrant requirement exists. Movant was subject to the following warrantless search condition: "Submit to search and seizure by any Probation Officer or any other law enforcement officer at any time of the day or night with or without a search warrant, including: vehicle, residence, person or any other property under your control" (Def. Exh. A at 1). Movant's five-year probation term commenced May 3, 2010.

Movant challenges the validity of the probation search on the grounds that the officers did not have probable cause to believe that movant resided at the residence to be searched, that he was engaged in criminal activity, and that evidence of the alleged criminal activity would be discovered at the residence. Movant's argument fails in light of recent precedent in our court of appeals that a defendant who is subject to a warrantless search as a condition of probation may be subject to searches whether or not police suspect him of wrongdoing. *United States v. King*, 672 F.3d 1133, 1339 (9th Cir. 2012). Furthermore, the officers had probable cause to believe the movant lived at the subject residence.

Prior to conducting a warrantless probation search, an officer must have probable cause to believe the probationer lives in the residence to be searched. *See United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006) ("[T]he facts known to the officers at the time of the search must have been sufficient to support a belief, in a [person] of reasonable caution," that the probationer lived at the residence searched").

The evidence demonstrates that the law enforcement officers executing the search had probable cause to believe that movant resided at 1526 32nd Street in Oakland. Movant's Alameda County Superior Court judgment entered on May 3, 2010, reflected that movant lived at that above-stated address (Ashley Decl. ¶ 4; Melton Exh. E). The Rohnert Park Department of Public Safety Incident Report regarding movant's July 2011 arrest, listed 1526 32nd Street as movant's address (Melton Exh. C at JPW-000026). Special Agent Ashley reviewed both of these documents prior to the search to determine movant's address (Ashley Decl. ¶¶ 4, 6). Furthermore, prior to the search, Mr. Paris, confirmed to Special Agent Alfiere that movant resided at the subject residence (Alfiere Decl. ¶ 14). Thus, prior to the search, there was probable cause to believe movant resided at 1526 32nd Street, and, indeed, he did (Wright Decl. ¶ 7).

Officers do not need reasonable suspicion to conduct a probation search for a person who is subject to a warrantless search as a condition of his probation. *King*, 672 F.3d 1139. In *King*, the defendant was subject to a warrantless search condition, with the following terms: "Defendant is subject to a warrantless search condition, as to defendant's person, property,

14

premises and vehicle, any time of the day or night, with or without probable cause." *Id*. at 1136. The Court reasoned:

> [s]impy because a search may be conducted without probable cause does not mean that it must be conducted with reasonable suspicion. It would be unreasonable to read defendant's probation condition as implicitly imposing a reasonable suspicion requirement. To the contrary, the plain import of defendant's probation condition, allowing warrantless searches at any time, is that defendant may be searched whether or not police suspect him of wrongdoing.

*Id*. at 1139.

On July 8, 2011, prior to the search of the residence, Special Agent Ashley performed a search of the NCIC system and determined that movant was on probation for a felony conviction and called the Alameda County Probation Office to confirm (Ashley Decl. ¶ 2). Special Agent Ashley also inquired about whether movant was subject to a warrantless search condition and determined he was based on his review of movant's Alameda County Superior Court judgment, which stated the specific terms of the warrantless search condition. The U.S. Secret Service Special Agents, including Special Agent Ashley, and the Oakland Police Officer conducted the probation search pursuant to the warrantless search condition of movant's probation (Alfiere Decl. ¶¶ 1–5).

Based on the foregoing, this order concludes that the search of the residence was a lawful probation search.

### C. Mr. Paris' Bedroom and Personal Computer.

On August 4, 2011, law enforcement officers also conducted a search of Mr. Paris' bedroom and his personal computer, located within the residence at 1526 32nd Street. Movant challenges the search of Mr. Paris' bedroom and his personal computer on the basis that Mr. Paris' consent to the search of his bedroom and his personal computer was involuntarily given. Movant challenges the search of the residence, generally, on the same ground, but because the order concludes that the search of the residence was a valid probation search, it need not address the issue of consent.

The government argues that movant does not have standing to challenge the validity of the search of Mr. Paris' bedroom or personal computer because movant did not have an

15

expectation of privacy in Mr. Paris' bedroom or computer and therefore has no standing to challenge the searches. The order agrees.

"To contest the legality of a search under the Fourth Amendment, the defendant must demonstrate a legitimate expectation of privacy in the place or item searched by showing an actual subjective expectation of privacy which society is prepared to recognize." *United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991). In support of his assertion that movant has standing to challenge the searches at issue here, defense counsel argues in the reply brief that, "Mr. Wright did posses a reasonable expectation of privacy in the residence as a whole as it was Mr. Wright's house and Mr. Paris only rented one room therein. Also, the agents had to pass through common areas in which Mr. Wright reasonably expected privacy" (Reply Br. 9). Defense counsel appended a reply declaration of movant stating that he sublet one bedroom to Mr. Paris. No more is said in support of establishing standing to challenge the search of Mr. Paris' bedroom and his personal computer.

Movant has not claimed any shared use or control of Mr. Paris' bedroom or his personal computer. Movant has not claimed that he stored items in Mr. Paris' bedroom or on Mr. Paris' personal computer. Despite the fact that movant put forward two declarations, one submitted in support of the motion and the other submitted as a reply declaration, movant has not created a record to show that he had an "actual subjective expectation of privacy" in Mr. Paris' bedroom or in his personal computer. Movant bears the burden of establishing standing to contest the legality of the search. He has failed to meet his burden. And Mr. Paris has not challenged the search of his bedroom or of his personal computer.

### D. Suppression is not Warranted.

Evidence seized as a result of an illegal search or seizure is the "fruit of the poisonous tree" and should be excluded. *Wong Sun v. United States*, 371 U.S. 471, 484–85, 488 (1963). Because the search of the black backpack and defendant's residence was lawful, suppression is not warranted here. Furthermore, based on the instant motion and record, there is no basis to suppress the evidence obtained from the search of Mr. Paris' bedroom or of his personal computer. Thus, the motion to suppress is **DENIED**.

16

**4.   MOTION TO COMPEL.**

Movant moves to compel production of all *Brady*, *Henthorn*, and *Giglio*, materials to which movant is entitled and all other discoverable materials under Rule 16. Movant does not contend that the government has failed to timely produce discovery. The government submits that it will comply with its discovery obligations. There is no occasion to render an advisory order on this issue. The motion to compel is **DENIED**.

## CONCLUSION

For the above-stated reasons, the motion to dismiss the indictment, suppress evidence, and compel discovery is **DENIED**. The final pretrial conference will go forward on **JUNE 25, 2012 AT 2:00 P.M.** as scheduled. The jury trial will commence on **JULY 9, 2012, AT 7:30 A.M.**

**IT IS SO ORDERED.**

Dated: May 17, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

17